## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| L.F. *on behalf of* J.F., *a minor*,<br><br>        Plaintiff,<br><br>    v.<br><br>NEWARK BOARD OF EDUCATION and EAGLE ACADEMY FOR YOUNG MEN OF NEWARK,<br><br>        Defendants. | Civil Action No. 25-14772 (JXN)(CF)<br><br>**OPINION** |

**NEALS**, District Judge

Before the Court is Defendants Newark Board of Education ("Board" or "District") and Eagle Academy for Young Men of Newark's ("Eagle Academy" or "School") (collectively, "Defendants") motion to dismiss Plaintiff L.F. on behalf of J.F.'s ("Plaintiff") complaint under Federal Rules of Civil Procedure[1] 12(b)(1) and 12(b)(6). (ECF No. 11.) Plaintiff opposed (ECF No. 17), and Defendants replied (ECF No. 18). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' motion to dismiss is **GRANTED in part**.

## I.    BACKGROUND

### A.    Statement of Facts

Plaintiff is J.F.'s father. (*See* Compl., ECF No. 1.) J.F., a minor, is a student at the Eagle Academy. (*Id.* ¶ 7.) The Eagle Academy is a school within the District. (*Id.* ¶¶ 8–9.)

J.F. has dyslexia. (*Id.* ¶ 10.) Though Plaintiff alleges J.F. "has a history of requiring and receiving support" through an Individualized Education Program ("IEP"), Plaintiff asserts that

---

[1] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

Defendants failed to provide J.F. with required and reasonable learning accommodations. (*Id.* ¶ 14.) Specifically, Plaintiff alleges that Defendants enrolled J.F. in "general education classes with large student to teacher ratios despite prior IEP requirements for small group instruction and individualized support" (*Id.* ¶ 15); placed J.F. in "a reading comprehension program at a level above his capabilities, resulting in his inability to make meaningful academic progress" (*Id.* ¶ 16); and failed to provide J.F. "reasonable accommodations" for his dyslexia, such as "audiobooks, screen readers or other audio supports (*Id.* ¶ 17). Plaintiff claims that J.F.'s speech and language therapy services have been "inconsistently provided or missed entirely," with Eagle Academy citing funding shortages as an excuse. (*Id.* ¶ 18.) Though J.F.'s IEP offers special education transportation services, Plaintiff claims J.F. has been dropped off at the wrong school "at least five" times. (*Id.* ¶ 19.)

In December 2023, a Learning Disability Teacher Consultant[2] ("LDTC") evaluated J.F. and recommended out-of-district placement at a school "specifically tailored to students" with language-based learning disabilities like dyslexia. (*Id.* ¶ 20.) The LDTC observed that J.F. would "benefit from learning accommodations in all classes and across all academic domains." (*Id.* ¶ 21.) According to Plaintiff, a District representative[3] "signed off that she reviewed [the LDTC's] evaluation and agreed with its findings and recommendations." (*Id.* ¶ 22.)

However, Plaintiff alleges that Defendants failed to implement the LDTC's recommendations, despite repeated requests from J.F.'s parents. (*Id.* ¶ 23.) Additionally, Plaintiff claims Defendants ignored Plaintiff's requests for records and IEP meetings (*id.* ¶ 24), inflated J.F.'s grades as pretext to not accommodate J.F.'s needs (*id.* ¶¶ 25–27, 36–37), set inappropriate

---

[2] Michael Hanley
[3] Felicia A. Bateman

IEP goals for J.F. (*id.* ¶ 29), and abruptly cancelled an IEP meeting with Plaintiff after Plaintiff's attorney requested to attend (*id.* ¶ 39).

### B.    Procedural History

Plaintiff filed this lawsuit against Defendants on August 20, 2025. (*See generally id.*) The Complaint includes claims for disability discrimination and failure to accommodate, in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 *et seq.* ("Count I"); disability discrimination and failure to accommodate, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.* ("Count II"); violation of Section 504 ("§ 504") of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* ("Count III"); and violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* ("Count IV").

Defendants moved to dismiss under Rules 12(b)(1) and 12(b)(6). (*See* Defs.' Moving Br., ECF No. 11-1.) First, Defendants argue that the Court (a) lacks subject matter jurisdiction over Plaintiff's ADA, § 504, and IDEA claims because Plaintiff failed to exhaust his New Jersey state-level administrative remedies; and (b) should decline to exercise supplemental jurisdiction over the NJLAD claim. (*Id.* at 5–15.) In the alternative, Defendants argue that Plaintiff's claim for money damages fails as a matter of law. (*Id.* at 15–18.) Plaintiff opposed (*See* Pl.'s Opp'n, ECF No. 17) and Defendants replied (Defs.' Reply, ECF No. 18).

## II.    <u>LEGAL STANDARD</u>

### A.    Rule 12(b)(1)

A complaint may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A party can move to dismiss for lack of subject matter jurisdiction at any time." *Bosco v. Compass Grp. USA, Inc.*, No. 22-6909, 2025 WL 1742657, at *2 (D.N.J. June 23, 2025). "Challenges to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual." *Lincoln*

*Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (quoting *Common Cause of Pa. v. Pennsylvania,* 558 F.3d 249, 257 (3d Cir.2009)). A facial attack "considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). In evaluating a facial attack, the Court construes the facts alleged in the complaint in a light most favorable to the non-moving party. *Id.* A factual attack asserts "there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Id.* In a factual attack, the Court may look beyond the facts alleged in the pleading. *Id.* "A district court may grant a motion to dismiss for lack of subject matter jurisdiction based on the plaintiff's failure to exhaust a required administrative remedy only if it [is] undisputed that there has been no attempt to exhaust the administrative remedy." *Moyer v. Showboat Casino Hotel*, 56 F. Supp. 2d 498, 499 (D.N.J. 1999).

### B.     Rule 12(b)(6)

Rule 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court conducts a three-step inquiry in evaluating a motion to dismiss under Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the Court identifies "the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, the Court accepts all plaintiff's well-pleaded factual allegations as true and "construe[s] the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)

(quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). But the Court disregards "legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). Third, the Court considers "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

## III.   <u>DISCUSSION</u>

Congress enacted the IDEA to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). "Under the IDEA, a state is eligible for federal funding if it complies with several requirements, all aimed at protecting the rights of students with disabilities and their parents." *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 271 (3d Cir. 2014). The IDEA principally requires "that states make available a [free appropriate public education] to children with disabilities." *Id.* (citing 20 U.S.C. § 1412(a)(1)). States "must also implement specified procedural safeguards to ensure children with disabilities and their parents are provided with due process." *Id.* at 272.

These safeguards, "known collectively as the IDEA's administrative process," *id.*, allow parents to file a complaint and participate in an impartial administrative hearing "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child," 20 U.S.C. § 1415(b)(6)(A). After completing the IDEA's administrative process, the IDEA affords "'[a]ny party aggrieved by the findings and decisions' made during or pursuant to the impartial due process hearing an opportunity for judicial review." *Batchelor*, 759 F.3d at 272 (quoting 20 U.S.C. § 1415(i)(2)(A)).

The IDEA "thus grants subject matter jurisdiction to the district courts," but only after plaintiffs "complete the administrative process." *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir. 1994). "A plaintiff's failure to exhaust administrative remedies under the IDEA deprives federal courts of subject matter jurisdiction." *M.S. v. Marple Newtown Sch. Dist.*, 635 F. App'x 69, 71 (3d Cir. 2015).

IDEA § 1415(*l*) provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted* to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(*l*) (emphasis added). § 1415(*l*) "bars plaintiffs from circumventing the IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and repackaging them as claims under some other statute—e.g., section 1983, section 504 of the Rehabilitation Act, or the ADA." *M.S.*, 635 F. App'x at 71 (quoting *Batchelor*, 759 F.3d at 272).

An action is subject to § 1415(*l*)'s exhaustion requirement if (1) the substance of the complaint "concerns the denial of" a free appropriate public education, *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 171 (2017); (2) the lawsuit arises under a federal law "protecting the rights of children with disabilities," 20 U.S.C. § 1415(*l*), and seeks a form of relief the IDEA provides, *Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142, 147–48 (2023); and (3) no exception to the exhaustion requirement applies, *see D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260 (3d Cir. 2014).

6

### A.     The Crux of the Complaint Concerns the Denial of J.F.'s Education

To discern "the gravamen of a complaint against a school concerns the denial of a [free appropriate public education], or instead addresses disability-based discrimination," the Court considers two questions:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor— have pressed essentially the same grievance?

*Fry*, 580 U.S. at 171. If the answer to both questions is "yes," a complaint probably does not concern the denial of a free appropriate public education; if the answer to those questions is "no," the complaint likely does concern the denial of a free appropriate public education. *Id.* "A further sign that the gravamen of a suit is the denial of a [free appropriate public education] can emerge from the history of the proceedings." *Id.* at 173. "In particular, a court may consider that a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute—thus starting to exhaust the Act's remedies before switching midstream." *Id.*

Here, Plaintiff expressly claims that Defendants discriminated against J.F. based on his disability because they refused to accommodate J.F.'s dyslexia, placed J.F. in inappropriate reading levels and in classes with too many students, failed to provide J.F. with consistent speech therapy, refused to comply with J.F.'s IEP, and failed to respond to Plaintiff's requests for records. (*See* Compl. ¶¶ 41–84.) This conduct could not have occurred at another public facility. Only schools may administer IEPs and set class sizes. And an adult could not have pressed the same grievance against Defendants. The Complaint relates to the services J.F. received *as a student*. In short, the crux of Plaintiff's complaint concerns the denial of J.F.'s right to a free appropriate public education.

7

## B.    Plaintiff Seeks Equitable Relief

§ 1415(*l*) does not require the exhaustion of claims "where a plaintiff brings a suit under another federal law for . . . a form of relief . . . [the] IDEA does not provide." *Luna Perez*, 598 U.S. at 147–48. This is true even for a "suit admittedly premised on the past denial of a free and appropriate education." *Id.* at 150. The IDEA authorizes "prospective injunctive relief" and "retroactive reimbursement to parents." *Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 370 (1985). The IDEA does not permit "compensatory and punitive damages." *Chambers ex rel. Chambers v. Sch. Dist. Of Phila. Bd Of Educ.*, 587 F.3d 176, 186 (3d Cir. 2009).

Here, Counts II (ADA), III (§ 504), and IV (IDEA) of the Complaint arise under federal laws "protecting the rights of children with disabilities" and expressly request declaratory and injunctive relief, and compensatory and punitive damages under the ADA and § 504. (*See* Compl. ¶¶ 64, 72; *id.* at *13.)

## C.    No Exceptions to Exhaustion Apply

The Third Circuit has identified four exceptions to the IDEA's exhaustion requirement: "(1) exhaustion would be futile or inadequate; (2) the issue presented is purely a legal question; (3) the administrative agency cannot grant relief; and (4) exhaustion would cause severe or irreparable harm." *D.E.*, 765 F.3d at 275. "The party seeking to invoke an exception has the burden to establish the exception." *Jackson Twp. Bd. of Educ. v. D.B. ex rel. Y.B.*, No. 23-3568, 2023 WL 6690473, at *4 n.8 (D.N.J. Oct. 12, 2023).

Plaintiff, who did not initiate the IDEA's administrative process, addresses none of the exceptions (*See* Pl.'s Opp'n), and in any event, none apply. There is no evidence IDEA's administrative process would be futile because Plaintiff has "not previously exhausted the administrative process under the IDEA and the factual record is not fully developed." *J.Q. v.*

8

*Washington Twp. Sch. Dist.*, 92 F. Supp. 3d 241, 252 (D.N.J. 2015). Likewise, the Court cannot conclude the issues in this case are purely legal because the factual record is not fully developed. *Lester H. by Octavia P. v. Gilhool*, 916 F.2d 865, 869 (3d Cir. 1990) (concluding a purely legal question presented "where the factual record is fully developed and no evidentiary disputes remain."). A New Jersey administrative law judge could grant Plaintiff the equitable relief he seeks. Finally, Plaintiff has not offered "a sufficient preliminary showing that [J.F.] will suffer serious and irreversible mental or physical damage (e.g., irremediable intellectual regression)" during the pendency of administrative proceedings. *Komninos*, 13 F.3d at 779.

### D.    The Exhaustion Requirement Bars Only Certain Claims

As discussed above, IDEA's exhaustion requirement applies to claims arising under a federal law "protecting the rights of children with disabilities," 20 U.S.C. § 1415(*l*), which seek a form of relief the IDEA provides, *Luna Perez*, 598 U.S. at 147–48. Counts II (ADA), III (§ 504), and IV (IDEA) arise under federal laws "protecting the rights of children with disabilities," 20 U.S.C. § 1415(*l*), and seek equitable relief. Yet Count I arises under *state* law.[4] And Counts II and III seek compensatory damages in addition to equitable relief.

---

[4] Defendants argue that § 1415(*l*) may apply to NJLAD claims, citing an unpublished New Jersey Appellate Division decision wherein the panel concluded that the plaintiff's state law claims were subject to IDEA's exhaustion requirement. *L.W. v. Egg Harbor Twp. Bd. of Educ.*, No. A-928-12, 2015 WL 1013164, at *2–3 (N.J. Super. Ct. App. Div. Mar. 10, 2015) ("Consequently, we conclude that the trial court correctly determined that plaintiff's CRA, LAD, and FAPE claims are, in fact, a repackaged IDEA claim subject to the IDEA's exhaustion requirement."). Defendant argues that, predicting how the New Jersey Supreme Court would rule on the issue of whether NJLAD claims fall within IDEA's exhaustion requirement, the Court should take guidance from *L.W.* and conclude it lacks subject matter over Count I.

This is unpersuasive. To be sure, "[i]n adjudicating a case under state law," the Court must "apply existing state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues before" the Court. *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1445 (3d Cir. 1996). The Court "should not decline to follow the reasoning of an intermediate appellate state court without good reason." *Sports Enters., Inc. v. Goldklang*, 165 F.4th 162, 169 (3d Cir. 2026). But the Court is not sitting in diversity, and this matter does not arise under state law. Moreover, federal court "jurisdiction is based on constitutional and federal statutory authority, not state law." *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 40 (3d Cir. 2018).

9

"As a general matter, if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad." *Jones v. Bock*, 549 U.S. 199, 221 (2007). Correspondingly, if a plaintiff's unexhausted claim seeks "both damages and the sort of equitable relief IDEA provides," the Court will bar the equitable component pending the plaintiff's exhaustion of their administrative remedies. *Luna Perez*, 598 U.S. at 150.

Because § 1415(*l*) applies to Counts II, III, and IV, and Plaintiff failed to exhaust his administrative remedies, the Court **dismisses** *without prejudice* Counts II, III, and IV to the extent they seek equitable relief.

### E.    The Court Stays the Remainder of the Claims

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "Determining whether to stay an action requires the court to balance competing interests, including whether the actions: (1) involve the same parties; (2) involve the same issues; or (3) are pending in the same court." *Ford Motor Credit Co. v. Chiorazzo*, 529 F. Supp. 2d 535, 542 (D.N.J. 2008). The Court must also consider "whether a stay would prejudice the plaintiff and if it would further the interest of judicial economy." *Id.*

In the interests of efficient case management and the avoidance of piecemeal litigation, the Court concludes that a stay of the claims not subject to § 1415(*l*) is warranted pending administrative resolution of the claims subject to § 1415(*l*). The § 1415(*l*) and non-§ 1415(*l*) claims are identical. They involve the same parties and the same issue—whether Defendants denied J.F. a free appropriate public education. The only difference between both sets of claims is the kind of relief Plaintiff seeks. Moreover, a stay does not prejudice Plaintiff. He can either engage with the

10

IDEA's administrative process (as § 1415(*l*) requires) and then bring all his equitable and monetary claims together; or he can proceed solely on the monetary claims.

Additionally, considerations of judicial economy strongly favor a stay. Allowing Plaintiff's damages claims to proceed, potentially to trial, while also awaiting the administrative resolution of Plaintiff's *identical* equitable claims would result in piecemeal litigation and risk inconsistent results. The Court finds it more efficient—for the litigants and its own docket—to have all claims in this litigation brought together.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 11) is **GRANTED in part**. Count IV (IDEA) of the Complaint is **DISMISSED** *without prejudice*. Counts II (ADA) and III (§ 504) are **DISMISSED** *without prejudice* to the extent they seek equitable relief. Counts II and III, to the extent they seek damages, and Count I (NJLAD) are **STAYED** pending Plaintiff's exhaustion of the IDEA's administrative process. An appropriate Order accompanies this Opinion.

**DATED: 5/13/2026**

_____
**JULIEN XAVIER NEALS**
**United States District Judge**